THE STATE OF VERMONT *v.* LORENZO JONES.

*Criminal Law.   Indictment.   Aqueduct.*

In order to constitute an offence under the statute against cutting, injuring or destroying a pipe used as an aqueduct for the conveyance of water, (Comp. Stat. chap. 104, sec. 31, p. 550,) the injury must be done to the pipe *while* it constitutes an aqueduct.

But it is sufficient in the indictment to allege the offence in the very words of the statute, and describe the pipe as " used as an aqueduct for the conveyance of water."

It is equally an offence under such statute whether the aqueduct injured is under the surface of the ground, and a part of the freehold, or not.

It is not necessary in an indictment for such an offence to allege the value of the pipe injured.

INDICTMENT.   The offence was charged in the indictment that the respondent " on the 2d day of December, 1857, with force and arms at Hydepark, aforesaid, willfully and maliciously did cut, injure and destroy certain leaden pipe, used as an aqueduct for the conveyance of water, being the property of one Harvey Jewett then and there being found, contrary to the form, force and effect of the statute, etc., etc."

The respondent demurred to the indictment, but the county court, at the December Term, 1859, in Lamoille county,—ALDIS, J., presiding, overruled the demurrer, and held the indictment sufficient, to which the respondent excepted.

*Joshua Sawyer*, for the respondent.

*R. C. Benton*, State's attorney, for the prosecution.

PIERPOINT, J.   The question in this case arises on demurrer to the indictment.

We think there can be no doubt as to the true construction of the statute creating the offence, attempted to be charged in the indictment.

The legislature evidently intended to provide for the punishment of all persons that should be found guilty of destroying, or injuring, the pipe of an aqueduct.   The language of the statute is that any person who shall " cut, injure or destroy any leaden or other pipe used as an aqueduct, for the conveyance of water," etc.   We think there can be no question that to constitute the offence, the injury must be done to the pipe while it constitutes the aqueduct through which water is transmitted from one point to another.   This is the plain and obvious meaning of the language. The words " used as an aqueduct," have reference to the condition of the pipe ; its then present use at the time of the injury, and not its general character, or the purpose for which it was originally made, or the use to which such pipe is ordinarily put.

But it is insisted that although the indictment charges the offence in the very language of the statute, still it is insufficient for the want of certainty in that it does not specifically appear that the pipe injured was in actual use as an aqueduct.   It is unquestionably true that in some cases when an attempt is made to charge an offence created by statute, it is not sufficient to make the charge in the language of the statute.   But it is a well settled *general* rule, that it *is* sufficient to describe the offence in the words of the statute ; and if the defendant insists upon a greater particularity, it is for him to show that, from the obvious intention of the legislature, or the known principles of law, the case falls within some exception to

such general rule. Wharton in his treatise on criminal law, p. 131, says: "When the words of the statute are descriptive of the offence, the indictment should follow the language, and expressly charge the described offence on the defendant, or it will be defective," and he cites many authorities in support of this position. When, however, the statute refers to a common law offence by the popular name, as "murder," "arson," etc., or describes it by terms constituting rather a legal conclusion, than a definition of the facts constituting it, the indictment must contain all the facts necessary to constitute the offence so described, and it is not sufficient to describe the offence in the same terms made use of in the statute.

In the case before us the statute particularly describes the offence in plain and simple language; the existence of no other fact is necessary to constitute the offence than those named in the statute, and an indictment charging the offence in the words of the statute must be construed to mean the same as the statute. But it is said the words "used as an aqueduct for the conveyance of water," are only descriptive of the character or kind of pipe referred to. If that is the true meaning of the words as used in the statute, then the offence consists in so injuring or destroying any *such* pipe, and the indictment is good, as that is the offence charged, for we cannot say those words mean one thing in the statute and a different thing in the indictment. If we say that the statute means pipe that constitutes an aqueduct, the same words must mean the same thing in the indictment, as the words are all simple and fully describe all the ingredients that constitute the offence intended to be punished. But we think there can be no reasonable doubt as to the meaning of this language. It is true that indictments are to be construed strictly in favor of the defendant, but still we are not to lose sight of reason in our constructions.

Can any one on reading this indictment entertain a reasonable doubt as to its meaning? The indictment charges that the defendant "wilfully and maliciously did cut, injure and destroy certain leaden pipe, used as an aqueduct," etc. We think the clear import of this language is that the pipe was in use as an

aqueduct, when the acts charged were committed. It speaks of pipe used as *an* aqueduct, some particular aqueduct, as a thing then in existence, and not as pipe that might be used for aqueducts if the owner saw fit so to use it, or as pipe that is ordinarily used for such purposes. The defendant could not be misled as to the charge brought against him, to which he was to plead, and against which he was to defend himself. The court could not doubt as to the offence for which the defendant was to be tried, or as to the manner of conducting the trial, or the judgment that ought to be rendered in case of conviction, and after judgment the record would always furnish a full defence if the defendant should·be afterwards prosecuted for the same crime. All the objects to be attained by the rule requiring certainty in indictments, are fully secured by this indictment.

It is further insisted that it was the intention of the legislature only to punish for an injury to pipe that was so laid as an aqueduct, that the pipe became a part of the realty, and that the indictment is defective in that it does not set forth that the pipe was so situated as to be a part of the freehold. We think such was not the intention of the legislature, but that the intention was to punish all willful and malicious injuries to the pipes constituting an aqueduct, whether placed under the surface and so situated as to be a part of the freehold, or over the surface and so situated, or the erection of that temporary character, that the pipe is only personal property. Certainly pipes situated above the surface are more exposed to such injuries, and the owners of such aqueduct are equally entitled to the protection afforded by the penalty, and such being the language of the statute, we see no occasion to limit it by construction.

It is also objected that the indictment is insufficient, for the reason that there is no allegation of the quantity or value of the pipe. This we think is not necessary ; the description of the property is sufficiently definite to predicate thereon a charge of the offence, and the punishment, as a matter of law, is in no respect affected by the quantity or value of the property, or the extent of the injury. The amount of the penalty to be imposed within the statute limit rests in the discretion of the court. The

character of the transaction as shown upon trial will have its effect in that respect, but no allegation is necessary to give it its full force.

The result is the judgment of the county court overruling the demurrer is affirmed.